IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:16-CR-145-TWT-JKL-15 |
| JEREMIAH COVINGTON (15) | |

**ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

Pending before the Court are the following motions filed by Defendant Jeremiah Covington:

– Motion for Full Identification of Government Undercover Agents/Informants [Doc. 754];

– Motion to Sever [Doc. 755];

– Motion to Suppress Relating to Events of May 3, 2016 [Doc. 757]; and

– Motion to Dismiss Indictment [Doc. 758].

For the following reasons, it is **ORDERED** that Covington's Motion for Full Identification of Government Undercover Agents/Informants [Doc. 754] be **DENIED.** It is **RECOMMENDED** that Covington's Motion to Sever [Doc.

755]; Motion to Suppress Relating to Events of May 3, 2016 [Doc. 757]; and Motion to Dismiss Indictment [Doc. 758] be **DENIED**.

## I.      BACKGROUND

Covington is charged in this case with RICO conspiracy (Count One) and conspiracy to possess with the intent to distribute more than 500 grams of methamphetamine (Count Twelve).  [*See* Doc. 1.]  In connection with Count One, the indictment alleges that Covington was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4).  During the time period relevant to this case, Covington allegedly served as the "First Coordinator of the Valdosta count and a Region for the southeast Georgia area."[1]  [Doc. 1 at 13.]

The indictment specifically alleges that Covington engaged the following overt acts in furtherance of the RICO conspiracy:

- Beginning in or about May 2012, and continuing through in or about August 2013, Covington allegedly distributed drugs, including heroin, with and for co-defendant Shauntay Craig.  [Doc. 1 at 18 (Overt Act ("OA") 5).]

---

[1] According to the Indictment, a "count" is a geographic group within the Gangsters Disciples organization.  [Doc. 1 at 2.]  The leader of an individual count is referred to as the "First Coordinator" or "First C."  [*Id.* at 5.]  A "Region" is a leader responsible for several counts within a state.  [*Id.*]

2

- On or about September 12, 2013, Covington and co-defendant Mangwiro Sadiki-Yisrael allegedly caused at least one fraudulent transaction to occur that resulted in excess of $19,900 being deposited into at least one account controlled by Covington. [Doc. 1 at 23 (OA 28).]

- On or about September 10, 2014, Covington and two other Gangster Disciples members traveled with two firearms from Valdosta, Georgia, to Atlanta, Georgia, to protect a heroin transaction. [Doc. 1 at 29 (OA 60).]

In Count Twelve, the indictment alleges that on or about August 6, 2015, Covington and co-defendants Shauntay Craig, Alvis O'Neal, Nicholas Evans, and James Travis Riley, conspired to knowingly and intentionally possess with intent to distribute more than 500 grams of methamphetamine. [Doc. 1 at 48.]

On March 24, 2017, Covington filed a motion to dismiss the indictment. [Doc. 758.] The government has responded to the motion [Doc. 882], and Covington has filed a reply [Doc. 886].

On March 24, 2017, Covington also moved to suppress evidence seized from a warrantless search of a car that he was driving on May 3, 2016. [Doc. 757.] On May 17, 2017, an evidentiary hearing was held before me on the motion to suppress. [Doc. 875.] To refer to the hearing transcript in this Report and Recommendation, I cite the docket number, followed by the page number of

the PDF file.  Following the hearing, the government filed a post-hearing brief in opposition to the motion [Doc. 906], Covington filed a post-hearing response brief (entitled a "Supplemented Motion to Suppress") [Doc. 973], and the government has filed a reply [Doc. 1032].

The Court addresses the pending motions in the following order:  (1) the motion to dismiss; (2) the motion to suppress; (3) motion to sever; and (4) motion for disclosure of confidential informants.

## II.    MOTION TO DISMISS INDICTMENT [Doc. 758]

Covington moves to dismiss the RICO and drug conspiracy on two related, but distinct grounds.  He first argues that the indictment should be dismissed because a government agent was involved in the alleged conspiratorial acts in which Covington is implicated.  Second, he argues that the indictment should be dismissed for government over-involvement in the alleged offenses.  I address each argument in turn.

### A.    Involvement of Government Agent in Conspiracy

Covington argues that all criminal charges against him in this case must be dismissed because the events giving rise to the charges "occurred entirely at the instance of a government agent."  [Doc. 758 at 3.]  Specifically, with respect to the allegation that on September 10, 2014, Covington and two other members of

the Gangsters Disciples traveled to Atlanta to protect a heroin transaction (Overt Act 60), Covington contends that they were "induced to travel by a government informant acting on behalf of the government, for an event that was not disclosed, nor even disclosed as being illegal." [*Id.*]  Similarly with regard to the August 2015 alleged possession with intent to distribute methamphetamine, Covington contends that the event could not have occurred but for the insistence of a government agent.  [*Id.* at 3.]

The government responds that even though a government agent is not a co-conspirator, a conspiracy may nonetheless exist where the conspiracy extends beyond the conspirator and the government.  [Doc. 882 at 5.]  The government points out that in this case, the grand jury found probable cause to believe that there were at least 30 co-conspirators with respect to the RICO conspiracy alleged in Count One, and four others in Count Twelve.  [*Id.* at 6.]  Thus, it is not a "legal impossibility" that Covington was engaged in the alleged conspiracies.  [*Id.*]

The Court agrees with the government that the involvement of a government agent provides no basis for dismissing the charges against Covington. There are two ways in which the government can prove a conspiratorial agreement to violate RICO, either by proving: (1) that a defendant personally agreed to commit two predicate acts in furtherance of the enterprise or (2) that a

5

defendant agreed to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise." *United States v. Nguyen*, 255 F.3d 1335 (11th Cir. 2001); *see also Salinas v. United States,* 522 U.S. 52, 63-65 (1997). The agreement must be between two or more culpable conspirators. *See United States v. Arbane*, 446 F.3d 1223, 1228 (11th Cir. 2006) (citing *United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989)). "If there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy." *Id.*

In this case, Covington has been indicted on charges that he was part of a RICO conspiracy involving at least thirty other individuals and that he was part of a drug conspiracy involving at least four other individuals. Because there were multiple other non-government agents involved in the alleged conspiracies, the Court agrees with the government that the charged conduct is not a "legal impossibility." [*See* Doc. 882 at 6.]

To the extent that Covington contends that the government is relying on untrue facts in the indictment or that the evidence is insufficient to support the charges, those defenses should be presented at trial rather than at this stage of the

proceedings.[2]  The purpose of a trial is to determine whether the defendant is guilty of the crimes charged—a district court is not authorized to dismiss an indictment prior to trial on grounds of insufficiency of evidence.  *United States v. Salgado*, No. 1:10-CR-251-TWT-AJB, 2012 WL 1080146, at *12 (N.D. Ga. Mar. 12, 2012), *report and recommendation adopted*, 2012 WL 1079957 (N.D. Ga. Mar. 30, 2012); *see also United States v. Jones*, No. 1:05-CR-617-WSD, 2007 WL 2071267, at *8 (N.D. Ga. July 19, 2007) ("[A]n indictment cannot be dismissed on a pretrial motion simply because the defendant asserts his innocence of the charges.").  At trial, Covington will be given an opportunity to cross-examine government witnesses and present his own witnesses.  He will also have the opportunity at trial to move for judgment of acquittal after the close of the government's case.  *See* Fed. R. Crim. P. 29; *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because

---

[2] Specifically, Covington argues that the materials provided in discovery do not support the allegation that on September 12, 2013, $19,000 was deposited into his bank account.  [Doc. 758 at 2.]  He also argues that the alleged overt acts are a series of unrelated events, and not part of an overarching criminal enterprise.  [*Id.* at 3.]

there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Criminal Procedure.").

### B.    Over-involvement of Government Agents

Covington moves to dismiss the indictment on the grounds that the government engaged in outrageous misconduct so shocking that Covington's due process rights were violated.  [Doc. 758 at 5-6.]  Specifically, Covington argues that the government recruited an informant who used his Gangster Disciple connections to assert himself as a leader in the organization and unite divisions among the organization within the State of Georgia.   [Doc. 886 at 2-3.] Covington maintains that the government informant selected him despite no indication that he (Covington) was predisposed to engage in criminal activity. But for the informant's involvement, Covington asserts, he would not have been involved in any criminal conduct.  [*Id.* at 4-5.]  With respect to the 2014 drug transaction (Overt Act 60), Covington contends that the informant "recruited and coaxed a reluctant Covington" to travel to Atlanta to protect a drug transaction, which, Covington points out, never occurred because law enforcement intercepted Covington en route to Atlanta.  [Docs. 758 at 2, 886 at 4, 6.)  With regard to the 2015 methamphetamine transaction that forms the basis of Count Twelve, Covington maintains that the informant inserted himself as a go-between between

Covington and co-defendant Shauntay Craig.  (Doc. 886 at 3, 5.)  According to Covington, the informant told Covington that he (Covington) owed a debt to Craig, and then the informant attempted to create the false impression that Covington was involved in a subsequent drug transaction, when, in fact, he was not.  (*Id.* at 3-4.)

The government responds that Covington's argument is without precedent or merit.  Citing cases from this Circuit and others, the government argues that the defense of outrageous government conduct is only sparingly applied and that the government's use of an informant to infiltrate the Gangsters Disciples organization falls far short of the level of conduct necessary to justify dismissal of criminal charges.

The government has the better argument.  In *United States v. Russell*, the Supreme Court recognized that, under some circumstances, outrageous government misconduct could provide an absolute defense to criminal charges. 411 U.S. 423, 431-32 (1973).  To establish this defense, "a defendant must show that, under the totality of the circumstances, the law enforcement technique at issue was so outrageous that it was fundamentally unfair and shocking to the universal sense of justice mandated by due process." *United States v. Rolon*, 445 F. App'x 314, 322 (11th Cir. 2011) (citing *United States v. Haimowitz*, 725 F.3d

1561, 1577 (11th Cir. 1984)).  The defense—assuming it is even recognized in this Circuit—"can only be invoked in the rarest and most outrageous circumstances."  *See id*; *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) (describing prior panel discussions of the doctrine as "dicta" and further pointing out that that several other circuits "have either rejected this defense completely" or "have been sharply critical of the defense").  Indeed, it appears that the doctrine has never been applied by the Eleventh Circuit to reverse a criminal conviction.  *See* Donald F. Samuel, *Eleventh Circuit Criminal Handbook* § 87 at 4-8 (2016 ed.).

The Court readily concludes that the alleged involvement of government agents in this case falls far short of constituting a due process violation.  The examples of alleged over-involvement that Covington has detailed for the Court demonstrate that, at worst, the government informant provided the opportunity for Covington to engage in criminal conduct.  Accordingly, Covington has not met the exceedingly high burden of demonstrating that the government's conduct was so outrageous or reprehensible to amount to a violation of his Fifth Amendment due process rights.

10

### C.    Summary

In sum, it is **RECOMMENDED** that Covington's motion to dismiss be **DENIED**.[3]

## III.   MOTION TO SUPPRESS [Doc. 757]

The Court next addresses Covington's motion to suppress evidence seized from a warrantless search of a car that he was driving on May 3, 2016.[4]  [Doc. 757.]

### A.    Background

The grand jury returned the indictment in this case on April 28, 2016, and a warrant was issued for Covington's arrest.  On May 3, 2016, the FBI and officers

---

[3] Covington requests an evidentiary hearing on his motion to dismiss "so that these matters may be inquired into further."  [Doc. 758 at 1.]  The Court disagrees.  "[W]ithout sufficient factual allegations to support an outrageous-government conduct defense, the Court need not hold an evidentiary hearing on the issue."  *United States v. Galvis-Pena*, No. 1:09-cr-25-TCB-CCH-4, 2012 WL 425240, at *5 (N.D. Ga. Feb. 9, 2012) (citation omitted).  As noted above, Covington's arguments "regarding outrageous governmental conduct raise questions that are intermeshed with questions going to the merits of the case because they would require proof of the criminal conduct alleged in the indictment. Therefore, they are not capable of resolution without a 'trial of the general issue' under Fed. R. Crim. P. 12(b)(2)."  *Id*. (footnote omitted).

[4] Covington also initially moved to suppress evidence seized during a September 10, 2014 traffic stop that occurred on Interstate 75 in Houston County, Georgia.  [Doc.756.]  Following the evidentiary hearing, Covington withdrew that motion to suppress.

with the Lowndes County, Georgia, Sheriff's Department had set up surveillance on Covington in anticipation of a planned coordinated take-down that was to occur the following day on the arrest warrant.  [Doc. 875 at 79, 92, 116.]  On that day, Sergeant Kenny Busby, one of the Lowndes County Sheriff's Department officers conducting surveillance, was following a Lexus driven by Covington in Valdosta, Georgia.  [*Id.* at 77-79.]  Covington's wife was a passenger in the vehicle.  [*Id.* at 80.]  Sgt. Busby observed numerous instances in which Busby failed to maintain his lane and saw an oncoming vehicle make an evasive maneuver after Covington's vehicle crossed into the its lane of travel.  [*Id.* at 80-81.]  Concerned that Covington may have been driving under the influence or that he was attempting to flee, Sgt. Busby pulled Covington over for reckless driving.  [*Id.* at 81.]

After the vehicle was stopped, Sgt. Busby asked for Covington's consent to search the vehicle, and Covington gave consent.  [Doc. 875 at 85.]  Sgt. Busby found two phones in plain view in the center console and front seat of the vehicle.  [*Id.* at 86.]  Prior to conducting the search, another investigator (who remains unidentified) had communicated to Sgt. Busby that the vehicle may have had a hollowed-out place for contraband—commonly known as a "trap."  [*Id.* at 109.]  As Sgt. Busby bent down to look under the driver's side seat, he braced himself

12

on the floor of the vehicle and noticed that floorboard under the driver's-side front-seat area was "unusually spongy."  [*Id.*]  Sgt. Busby concluded that the sponginess might indicate the existence of a trap.  [*Id.* at 86-87.]  Another officer on the scene, Investigator Thompson, also found a small switch under the steering wheel that did not have any power to it.  [*Id.* at 87.]  Sgt. Busby believed, based on his training, that the switch could also indicate the presence of a trap.  [*Id.*]  At this point, no items had been removed from the Lexus.  [*Id.* at 88.]

Covington was then placed under arrest for reckless driving.  [Doc. 875 at 89.]  The Lexus was then removed to the Sheriff's Department office to continue the search for a possible trap.  [*Id.* at 88, 99-100.]  Sgt. Busby made the decision to remove the vehicle.  [*Id.* at 105.]  He testified that he "would assume" that he did so because Covington had been arrested, and an arrest is a reason to impound a vehicle.  [*Id.*]  Pursuant to an inventory policy, law enforcement performed an inventory search of the vehicle.  [*Id.* at 89.]  Three mobile telephones, a tablet, and a digital camera were seized in connection with the inventory search, and the devices were sent via Federal Express to an FBI facility in Atlanta.  [*Id.* at 118-

19, 124-25.]  A warrant was later obtained to search those devices.[5]  [*Id.* at 118.]

Ultimately, no trap was located.  [*Id.* at 109.]

### B.    Discussion

Covington concedes that he consented to the search of the vehicle and that

at least two of the cell phones were in plain view within the vehicle.  [Doc. 973 at

2.]  He nevertheless contends that the seizure of the phones (and presumably the

other devices) was unconstitutional because the phones were seized after the

vehicle had been impounded.  [*Id.* at 6.]  Covington maintains that he

impoundment itself was *per se* unreasonable because there were no meaningful

impound procedures in place.  [*Id.* at 11, 15.]  He also argues that the post-

impoundment seizure was improper because it went beyond the mere caretaking

function of impoundment inventory searches.  [*Id.* at 12-13.]

The government advances three alternative theories as to why the

warrantless search of the Lexus was constitutional:  (1) Covington consented to

the search; (2) a warrant was unnecessary to search the Lexus under the

automobile exception to the warrant requirement; and (3) the search was made in

_____

[5] It is unclear from the record precisely how many devices were seized,
which ones were searched, or which ones contained evidence relevant to this
case.

14

connection with an impoundment search.  The government further argues that the seizure of the phones was proper under any of those theories because the phones were in plain view and law enforcement had probable cause to suspect that the phones were evidence of criminal activity, based on their knowledge that Covington had been intercepted on a court-authorized wiretap.

Of those three theories, the Court finds that search of the Lexus was best justified by the automobile exception.

### 1.       Probable Cause Existed to Support the Traffic Stop

The starting point for the Court's analysis is whether the traffic stop itself was constitutional.  A traffic stop is constitutional if it is based upon probable cause to believe that a traffic violation occurred, even if law enforcement's real motivation is suspicion of other criminal activity.  *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008).  "When determining whether an officer had probable cause to believe that a traffic violation occurred, the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *Harris*, 526 F.3d at 1337 (quotation marks omitted).

Here, neither party disputes—and the record amply demonstrates—that Sgt. Busby had probable cause to believe that Covington committed a traffic

violation, namely reckless driving.   Specifically, Sgt. Busby testified that Covington failed to maintain his lane of travel "numerous times" and that an oncoming vehicle had to take an evasive maneuver to avoid Covington's vehicle after Covington's vehicle crossed into the opposite lane.  [Doc. 875 at 80-81.]  To the extent that Covington contends that the traffic stop was pretextual, the Supreme Court's decision in *Whren* forecloses that argument.   Accordingly, considering the totality of the circumstances, the Court concludes that Sgt. Busby had probable cause to stop Covington's vehicle.

### 2. The Search of the Vehicle Was Valid Under the Automobile Exception

Under the automobile exception to the warrant requirement, law enforcement may conduct a warrantless search of a vehicle if (1) it is readily mobile and (2) law enforcement has probable cause for the search.  *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007).  A vehicle is "readily mobile" if it is operational.  *Id.*  The search of a vehicle need not occur contemporaneously with its lawful seizure.  *Id.* (citing *United States v. Johns*, 469 U.S. 478 (1985)).  Probable cause exists for a search where, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle.  *Id.*

16

Here, there is no dispute that the Lexus was operational and therefore readily mobile. Covington was driving the vehicle on public streets in Valdosta when the traffic stop occurred. Therefore, the "readily mobile" prong of the automobile exception is met.

Turning next to whether probable cause existed to believe that the vehicle contained contraband or evidence of a crime, the evidence demonstrates that mobile phones were in plain view in the front seat and center console area of the vehicle. Agents also knew that Covington was the subject of arrest warrant on a federal RICO and drug conspiracy indictment and that he had been intercepted on court-authorized wiretaps. The search of the interior of the vehicle also revealed indicia of a possible trap, including unusual sponginess of the floorboard and a switch under the steering column. Considering the totality of the circumstances, there was a fair probability that evidence of a crime would be found in the vehicle. Accordingly, law enforcement had probable cause to believe that the vehicle contained evidence of a crime, and law enforcement was authorized to enter the car and search it.

### 3.    Seizure of the Phones

Covington argues that the phones were physically seized only after the car was impounded. He maintains that his consent to search the vehicle had expired

17

because by the time that the impoundment took place, the traffic stop had ended. He also contends that the impoundment was not proper, and therefore, the resulting inventory search was also unconstitutional.

The Court agrees that the government has made a weak showing that the vehicle was impounded pursuant to an impound policy. The government did not introduce a written pertinent impound policy into evidence, and Sgt. Busby's testimony concerning the terms of the policy was generic at best. But the Court need not decide whether the impoundment was conducted pursuant to a policy because the seizure of the electronic devices was constitutional under the automobile exception. As discussed above, law enforcement had probable cause to stop and search the vehicle, and the Court has found no authority to support the proposition that the authority to search a vehicle under the automobile exception vanishes once law enforcement removes the vehicle from the scene of the traffic stop. To the contrary, it is well-established that a search under the automobile exception need not occur contemporaneously with the lawful seizure of the vehicle. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Where probable cause exists to conduct a warrantless search of a vehicle, law enforcement may properly conduct the search and remove its contents at a stationhouse. *See United States v. Johns*, 469 U.S. 478, 484 (1985) (holding that

law enforcement officers "acted permissibly by waiting until they returned to DEA headquarters before they searched the vehicles and removed their contents" where probable cause existed that the vehicles contained contraband); *United States v. Hinds*, 23 F. App'x 100, 101 (11th Cir. 2001) ("[O]fficers may perform a warrantless search even after a vehicle is immobilized and under police custody, if officers have probable cause to believe contraband is inside the vehicle.").  Law enforcement could have conducted the entire search at the roadside scene, but decided to remove the vehicle to the Sheriff's office to conduct a thorough search for a trap.   Because there was probable cause to search the Lexus, law enforcement was authorized to search the vehicle and seize potential evidence of criminal activity.   Thus, it is immaterial that the search occurred at the Sheriff's office rather than at the scene.

For these reasons, it is **RECOMMENDED** that Covington's motion to suppress the fruits of the search be **DENIED**.[6]

---

[6] Because the automobile exception justified the search, the Court need not address whether the search was alternatively justified as an inventory search when the car was impounded or whether Covington's consent extended to the seizure of the electronic devices.

### C.    Challenge to Warrants to Search Phones

For the first time in his post-hearing response brief, Covington challenges the warrants for the search of the phones in this case.  [Doc. 973 at 1-18.] Relying on *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), Covington argues that the government unreasonably waited until mid-August 2016 to obtain a search warrant for the phones, a delay of over three months.  [*Id.* at 17.]

The government makes no substantive response to this argument in its reply brief.  Rather, the government asserts that it is Covington's burden to show that the warrant is unconstitutional, that Covington "has made no attempt to properly mount such a challenge."  [Doc. 1032 at 3.]

The Court agrees that Covington has not properly raised the purported delay in obtaining the warrant as a basis for suppression.  Covington's motion to suppress focused on the circumstances surrounding the May 3, 2016 traffic stop and the constitutionality of the seizure of the phones.  The motion makes no mention of the warrant itself.  Likewise at the hearing, there was no substantive testimony developed concerning the timing of the government obtaining the search warrant for the phones.  Instead, the FBI agent who seized the phones testified only that a search warrant was obtained after the phones were seized. [Doc. 875 at 122-24.]  Covington provides no detail about the warrant at all.  He

20

has not provided a copy of the warrant to the Court, nor has he even identified precisely when the warrant was issued. [*See* Doc 973 at 17.]

But putting aside the untimeliness of Covington's challenge to the warrant, his argument that *Mitchell* mandates suppression under the circumstances of this case is without merit. In *Mitchell*, law enforcement executed a "knock and talk" warrant at the residence of the defendant, who at that time was a "possible target" in a child pornography investigation. At the residence, agents seized a hard drive from the defendant's computer acting on probable cause that the drive contained evidence of child pornography. *Mitchell*, 565 F.3d at 1349. Twenty-one days after agents seized the drive, agents obtain a search warrant. The court held that the three-week delay in applying for a warrant was unreasonable. *Id.* at 1352.

*Mitchell* is readily distinguishable. Covington was not merely a "possible target" in a government investigation—he had been indicted on two felony charges of RICO conspiracy and drug trafficking conspiracy and there was an outstanding warrant for his arrest on those charges. He had been intercepted on wiretaps in connection with the alleged criminal activity; thus, the phones had direct and obvious evidentiary value. Also unlike the defendant in *Mitchell*, Covington has been in custody since his arrest on May 3, 2016, and he makes no argument that he could have made use of the phones while in custody. It is also

21

relevant that he makes no assertion that he demanded the return of the phones at any point before the government obtained a search warrant.  *See United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011), citing *United States v. Johns*, 469 U.S. 478, 487 (1985); *see also United States v. Ilonzo*, No. 1:12-CR-276-SCJ-GGB, 2015 WL 5827598, at *21 (N.D. Ga. Oct. 6, 2015), *adopted at* *1-6.  As noted by Magistrate Judge Gerrilyn G. Brill in *Ilonzo*, the Supreme Court's reasoning in *Johns*—"that failure to seek return of evidence that was properly seized at its outset undermines a later claim that a delay in searching the property had an adverse effect of a legitimate interest—is pertinent here."   *Ilonzo*, 2015 WL 5827598, at *21 (presuming that if the seizure of defendants' computers was warrantless, "it is not clear that the Defendants could show the requisite adverse effect on their legitimate interests in the computer" because defendants did not seek return of the computers).[7]  In sum, *Mitchell* does not mandate suppression of evidence obtained from the phones.  *See United States v. Shaw*, 531 F. App'x

---

[7] In *Ilonzo*, Judge Brill also concluded that *Mitchell* was inapplicable for the more fundamental reason that a search warrant had been issued before the defendants' computers were seized.  *Ilonzo*, 2015 WL 5827598, at *20.  Thus, even if the defendant had demanded return of the computers, it is highly unlikely that law enforcement would have done so.  In the case at bar, there was no warrant authorizing the seizure of the phones at the time of their seizure.  Thus, the fact that Covington does not contend that he demanded return of the phones is all the more relevant.

946, 949 (11th Cir. 2013) (distinguishing *Mitchell* on nearly identical grounds in case where there was three month gap between seizure of cell phones and obtaining warrant for their search).

The Court instead considers Covington's challenge to the warrant under the factors that the Eleventh Circuit identified in *United States v. Laist*, 702 F.3d 608 (11th Cir. 2012), a case decided three years after *Mitchell*.  In *Laist*, the Eleventh Circuit stated that a district court should consider, among other things: (1) the significance of the interference with the person's possessory interest; (2) the duration of the delay; (3) whether the person consented to the seizure; (4) the government's interest in holding the property as evidence; (5) the nature and complexity of the investigation, including whether law enforcement resources were necessarily diverted to other matters; (6) the quality of the warrant application and the amount of time the court would expect such a warrant would take to prepare; and (7) any other evidence proving or disproving law enforcement's diligence in obtaining the warrant.  *Laist*, 702 F.3d at 613-14.  The court explained that the reasonableness of the duration between a seizure and obtaining a search warrant is a fact-intensive inquiry, "and it is therefore unwise to establish a duration beyond which a seizure is definitively unreasonable or, as discussed below, even presumptively unreasonable." *Id.*

23

Covington makes passing reference to *Laist*, citing the case only to note that the court takes a "totality-of-the-circumstances approach" to these issues. [Doc. 973 at 17.]  He does not address the factors in *Laist* individually, but instead argues that because he did not consent to the seizure of the phones, "it was incumbent on the agents to timely obtain a search warrant, to justify a search of its contents."  [*Id.*]

The Court has considered the *Laist* factors, and concludes that under the totality of the circumstances, the duration between the seizure of the phone was not unreasonable under the circumstances of this case.   As noted above, Covington was arrested during the traffic stop, and he has remained in custody since his arrest.  He proffers no evidence to suggest that he could somehow lawfully have possession or use of a cell phone while in custody.  Nor does it appear that he demanded the return of the phones.  The government also had a strong interest in retaining the phones, given the nature of the charges in this case and the fact that Covington had been intercepted on wire communications.  As to the reasons for the duration and law enforcement's diligence, Covington made no attempt to elicit any such information at the evidentiary hearing in this case.  In fact, as noted above, he did not raise this issue until post-hearing briefing. Similarly, Covington makes no argument as to the quality of the warrant

24

application or how much time one would expect it would take to prepare such a warrant. Applying the *Laist* factors to the record before the Court, the Court concludes that the time period between law enforcement's seizure of the devices and its obtaining a search warrant was not so unreasonable to justify suppression.

Accordingly, it is **RECOMMENDED** that Covington's Motion to Suppress [Doc. 757] be **DENIED** to the extent that it challenges the search warrants for the electronic devices.

## IV.   MOTION TO SEVER [Doc. 755]

### A.   The Parties' Arguments

Covington moves to sever the trial against him from all other co-defendants on the grounds that he will be unduly prejudiced by the admission of evidence of alleged racketeering conspiracy activity with which Covington had no involvement. [Doc. 755.] He argues that the government's theory of the case does not allow for the possibility that only some members of the Gangster Disciples are actually engaged in a criminal enterprise, and that some members are innocent of using the organization for criminal activity. [*Id.* at 1-2.] He also argues that the Gangster Disciples organization is comprised of diverse subparts located across the state of Georgia and the nation. If he is tried with co-defendants, and the jury finds that alleged criminal activity occurred in one

subunit, "it would be nearly inevitable that this conclusion would bleed over into areas that are not plausibly units of racketeering activity, but for its members being included in the same indictment." [*Id.* at 2.] Covington maintains that the wide spectrum of alleged criminal activity, ranging from nonviolent drug dealing to murder, makes it inevitable that defendants who engaged in less egregious criminal activity will be prejudiced. [*Id.* at 3.] Moreover, individual acts of drug dealing do not necessarily constitute a RICO conspiracy, where the only thread binding the individuals together is their alleged affiliation in the Ganger Disciples organization. [*Id.*] In short, Covington maintains that the conduct with which he is charged is comparatively minor, which creates a risk that the jury will be confused about the scope of the RICO conspiracy and potentially "lump everyone into the same basket of deplorables." [*Id.* at 7.]

Covington also submits that at trial the government will present different facts to prove other aspects of the RICO conspiracy that do not involve his alleged fraud and drug-dealing acts. [Doc. 755 at 4.] He contends that he faces prejudicial spillover from those facts, and "should not be convicted of RICO enterprise on the strength of activities traceable to co-defendants acting in concert, but not to the stand-alone activities alleged as to him." [*Id.*]

26

Covington also requests that, in the event that the government produce statements of a co-defendant that inculpates Covington, that his trial be severed from such defendants under *Bruton v. United States*, 391 U.S. 123 (1968). [Doc. 755 at 7.]

The government responds that Covington is properly joined as a defendant in this case under Federal Rule of Criminal Procedure 8 since the indictment clearly alleges that he participated in the RICO and drug trafficking conspiracies alleged in Counts One and Twelve. [Doc. 888 at 4.]  The government also argues that Covington has not demonstrated that he will receive an unfair trial and suffer prejudice if tried together with co-defendants.  [*Id.* at 5-6.]  The government maintains that any danger of prejudicial spillover can be cured with a cautionary instruction to the jury.  [*Id.* at 6-7.]

In reply, Covington argues that the Court should sever Count One (charging RICO conspiracy) from Count Twelve (charging drug conspiracy). [Doc. 891.]  He argues that Count Twelve involves events that are separate from the RICO conspiracy.  [*Id.* at 1-2.]  Covington further argues that the evidence linking him to other alleged co-conspirators and the Gangster Disciples organization itself is weak at best.  [*Id.* at 2-5.]

**B.**     **Discussion**

**1.**     **Covington is Properly Joined as a Defendant**

The Court's analysis begins with the threshold issue of whether joinder of Covington as a defendant in this case is proper.   Federal Rule of Criminal Procedure 8(b) provides that joinder of defendants is proper "if they are alleged to have participated in the same . . . series of acts or transactions constituting an offense or offenses."   To meet the "same series of acts or transaction" requirement of Rule 8(b), the government must demonstrate that the acts alleged are united by substantial identity of facts or participants; however, there is no requirement that each participant participate in all acts or even know the other participants' roles in the alleged activities.   *United States v. Holloway*, 971 F.2d 675, 679 (11th Cir. 1992).

It is well-established that joinder is proper where, as here, the indictment charges multiple defendants with participation in a single conspiracy.   *See United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985).   The general rule is that defendants indicted together should be tried together, especially in conspiracy cases.   *United States v. Chavez*, 584 F.3d 1354, 1360 (11th Cir. 2009).   "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial

28

trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011).

In this case, the indictment alleges that Covington participated in both the RICO conspiracy and drug trafficking conspiracy charged in Counts One and Twelve.  While Covington disputes his culpability and involvement in criminal activity, those are issues for trial.  Rule 8(b) is a pleading rule, and courts look to the indictment to determine whether joinder is proper under that rule.  *See United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001); *United States v. Melvin*, 143 F. Supp. 3d 1354, 1363 (N.D. Ga. 2015).  Based on the allegations in the indictment, the Court readily concludes that Covington has been properly joined as a defendant in this case with respect to both Counts One and Twelve.

Having found that Rule 8(b) is satisfied, the Court next turns to whether the potential of prejudice to Covington at trial warrants severance.  Federal Rule of Criminal Procedure 14 allows for severance if it appears that a defendant will be prejudiced by a joinder of offenses or defendants.  "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United*

*States*, 506 U.S. 534, 539 (1993).  The Eleventh Circuit has explained that "[s]everance . . . is "warranted only when a defendant demonstrates that a joint trial will result in 'specific and compelling prejudice' to his defense." *Liss,* 265 F.3d at 1228 (citation omitted).  "Compelling prejudice occurs when the jury is unable 'to separately appraise the evidence as to each defendant and render a fair and impartial verdict.'"  *Id*. (quoting *United States v. Meester*, 762 F.2d 867 (11th Cir.1985)).  Cautionary instructions to the jury are presumed to adequately safeguard against prejudice.  See *Lopez*, 649 F.3d at 1235 (cautionary instructions to the jury "ordinarily will mitigate the potential spillover effect of evidence of a co-defendant's guilt").

The Court is not persuaded that the nature and circumstances of Covington's involvement in the alleged RICO and drug conspiracies justify severance under Rule 14.  The thrust of Covington's argument is that a jury will be unable to sift through the evidence at trial and make an individual determination of guilt as to Covington.  But that is a risk that is potentially present in any multi-defendant conspiracy case.  As the Eleventh Circuit has explained, the general rule favoring joinder of defendants who have been indicted together applies to coconspirators, even if one defendant had a lesser level of participation in the conspiracy.  *United States v. Leavitt*, 878 F.2d 1329, 1340

(11th Cir. 1989) ("In a conspiracy case, coconspirators should usually be tried together; the fact that a defendant only participated in one aspect of the conspiracy does not by itself warrant severance."). Whatever risk there may be can likely be cured through limiting instructions to the jury. *See Zafiro*, 506 U.S. at 539. Accordingly, at this point, the Court concludes that Covington has not demonstrated that he would suffer such compelling prejudice to mandate severance. Covington's motion to sever due to prejudicial spillover should therefore be denied.

### 2.      Severance Based on *Bruton*

In a single paragraph at the conclusion of his motion to sever, Covington also moves for severance under *Bruton v. United States*, 391 U.S. 123 (1968). In *Bruton*, the Supreme Court held that post-arrest statements made by a non-testifying co-defendant that incriminate other defendants are inadmissible because such statements violate the other defendants' Sixth Amendment rights to confront and cross-examine adverse witnesses. *Bruton*, 391 U.S. at 126. Covington has not identified any specific statement or testimony that might be offered at trial that would create a problem under *Bruton*, nor has he identified any co-defendant who made a statement or whether such defendant is going to trial. Accordingly, at this point, the Court is unable to evaluate the motion and the appropriateness of

any remedial efforts that could be taken at trial to avoid a *Bruton* problem. Accordingly, it is recommended that the Covington's motion to sever be denied at this time.

### 3.    Severance of Counts One and Twelve

As noted above, Covington raises for the first time in his reply brief the argument that Count One should be severed from Count Twelve.    "As a preliminary matter, when a party introduces a new argument in a reply brief, the Court may either strike it or permit the non-moving party additional time to respond to the new argument.  *United States v. Govereh*, No. 1:07-CR-131-JEC, 2010 WL 28565, at *3 n.4 (N.D. Ga. Jan. 5, 2010) (Carnes, J.), *aff'd*, 423 F. App'x 861 (11th Cir. 2011).  Nonetheless, considering the merits of the argument, the Court concludes that severance of Counts One and Twelve is not mandated here.

Rule 8(a) of the Federal Rules of Criminal Procedure states:

> Joinder of Offenses.  The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The Eleventh Circuit construes Rule 8(a) broadly in favor of initial joinder. *See*, *e.g.*, *United States v. Smalley*, 754 F.2d 944, 946 (11th Cir. 1985). If joinder of offenses is proper under Rule 8(a), then the defendant must show that severance is necessary due to undue prejudice under Rule 14. See Fed. R. Crim. P. 14(a).

Here, Counts One and Twelve are properly joined because they are of the same or similar character. Specifically, the indictment alleges that Covington was involved in drug transactions both in furtherance of the RICO conspiracy alleged in Count One and the drug trafficking conspiracy in Count Twelve. In addition, the indictment alleges that co-defendant Shauntay Craig was involved in those activities as well as a co-conspirator. As for prejudice, any prejudicial spillover between counts can be cured by appropriate instructions to the jury, if necessary. Accordingly, to the extent that Covington's motion to sever seeks severance of Counts One and Twelve, severance should be denied.

### C.    Summary

In sum, it is **RECOMMENDED** that Covington's Motion to Sever [Doc. 755] be **DENIED**. It bears mentioning, however, that severance is within the discretion of the trial judge, who must ultimately balance the efficient and orderly presentation of the case with the possibility of prejudice to defendants and the ability to cure such prejudice with instructions. This is a complex case involving

many defendants and issues may arise as this matter moves toward trial that may justify another look at severance of this and other defendants for trial. Although I recommend denying the motion at this stage in the proceedings, the trial judge may, of course, revisit the question of severance closer to trial. *See United States v. Alcindor*, No. 1:05-CR-0269-TWT-CCH, 2005 WL 8148993, at *5 (N.D. Ga. Dec. 7, 2005) (denying motion for severance but noting that severance is within the province of the trial judge), *report and recommendation adopted*, 2006 WL 8426658 (N.D. Ga. Mar. 10, 2006).

## V.   MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANTS [Doc. 754]

### A.   The Parties' Arguments

Covington moves for the disclosure of all persons "assisting the government as informants and as active participants in investigation efforts."[8] [Doc. 754 at 1.] Specifically, Covington argues that at least one government informant played an integral role in infiltrating the Gangster Disciples organization and participating in and organizing the criminal activity that forms the basis of the indictment. [*Id.* at 4-5.]

---

[8] It is assumed for purposes of this motion that "persons assisting the government as informants and as active participants in investigation efforts" are "confidential informants."

34

The government opposes the motion principally on the ground that it intends to call at trial all informants who actively participated in criminal activity with Covington, and therefore, is not required to disclose the identity of the confidential informant at this time.  [Doc. 802 at 2-3.]  The government also states that to the extent that any information is required to be produced under *Brady*,[9] the government understands its obligations to produce such information. As with respect to information that falls under *Giglio*,[10] such information will be disclosed as to the informants who testify at trial at the time the government provides *Jencks*[11] material, *i.e.*, "shortly before trial."  [*Id.* at 4.]

**B.    Discussion**

It is well-established that the government has a limited privilege to withhold the identity of law enforcement informants.  *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  The purpose of this privilege "is the furtherance and protection of the public interest in effective law enforcement."  *Id*.  But where the disclosure of an informant's identity or the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

[10] *Giglio v. United States*, 405 U.S. 150 (1972).

[11] The *Jencks* Act, 18 U.S.C. § 3500.

determination of a cause, the trial court may require disclosure. *Id*. at 60-61. In balancing these interests, the Court must take into account "the particular circumstances of each case, the crime charged, possible defenses, and the potential significance of the informant's testimony." *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991). Courts in this Circuit consider the following three factors in evaluating whether the government should be required to reveal the identity of informants: "(1) the extent of the CI's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the CI; and (3) the government's interest in nondisclosure." *United States v. Razz*, 240 F. App'x 844, 847 (11th Cir. 2007) (citing *Gutierrez*, 931 F.2d at 1490).

That the concerns in *Roviaro* are generally inapplicable, however, where the government intends to call the informant as a witness at trial. *See Banks v. Dretke*, 540 U.S. 668, 697 (2004) ("The issue of evidentiary law in *Roviaro* was whether (or when) the Government is obliged to reveal the identity of an undercover informer the Government does *not* call as a trial witness."); *United States v. Rook*, No. 1:15-CR-380-SCJ, 2016 WL 2344877, at *3 (N.D. Ga. May 3, 2016); *United States v. Pineda*, No. 1:11-CR-00006-CAP-JFK, 2012 WL 2906758, at *44 (N.D. Ga. June 4, 2012), *adopted at*, 2012 WL 2907447 (N.D.

Ga. July 16, 2012).  Here, the government has indicated that it intends to call the confidential informant relating to the allegations against Covington as a witness during the trial and will disclose the identity of the informant at prior to the trial and provide any related Jencks Act, *Brady*, and *Giglio* materials related to the confidential informant.  Accordingly, *Roviaro* does not require disclosure of the confidential informant(s) identity at this time.

## VI.   CONCLUSION

For the following reasons, it is **ORDERED** that Covington's Motion for Full Identification of Government Undercover Agents/Informants [Doc. 754] be **DENIED.**  It is **RECOMMENDED** that Covington's Motion to Sever [Doc. 755]; Motion to Suppress Relating to Events of May 3, 2016 [Doc. 757]; Motion to Dismiss Indictment [Doc. 758], and "Supplemented Motion to Suppress" [Doc. 973] be **DENIED**.

There are no matters pending before the undersigned for Defendant Covington (15), and the Court has not been advised of any impediments to the

scheduling of a trial as to this defendant.   Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**[12]

IT IS SO ORDERED, RECOMMENDED, and CERTIFIED this 4th day of October, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge

_____

[12] Since matters pertaining to Covington's codefendants still are pending, the District Court is not required to place Covington's case on the trial calendar at this time.  18 U.S.C. § 3161(h)(6).