IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JEREMIAH COVINGTON, | : | MOTION TO VACATE |
| Fed. Reg. No. 70016-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:16-CR-145-TWT-JKL-15 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:19-CV-5359-TWT-JKL |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Jeremiah Covington has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 2954). Movant seeks to challenge the constitutionality of his August 21, 2018, convictions and sentences in the Northern District of Georgia following his guilty plea. As an initial matter, the Government's motion for an extension of time to file its response [Doc. 3034] is **GRANTED** *nunc pro tunc*, and the response filed on January 22, 2020 is accepted as filed.

### I.   BACKGROUND

On April 28, 2016, a federal grand jury indicted Movant with RICO conspiracy (Count One) and a conspiracy to distribute methamphetamine (Count Twelve).[1]  (Doc. 1). Movant entered a negotiated guilty plea to Count One of the indictment on August 21, 2018, pursuant to a written plea agreement. (Doc. 1561).

---

[1]   The grand jury also indicted thirty-two co-defendants for the RICO conspiracy and various other charges. (Doc. 1).

At the same time, Movant also entered, via a written agreement, a negotiated plea to charges Movant faced in the Middle District of Georgia for felon in possession of a firearm.[2] *See United States v. Covington*, Criminal Action No. 1:18-CR-321-TWT at Doc. 3-1.

During the plea hearing, the Court requested that the Government recite the facts upon which the Government would rely if the case went to trial, and cautioned Movant to "listen very carefully to what [the Assistant United States Attorney ["AUSA"]] has to say because when he finishes, I'm going to ask you if there is anything that he said about the facts of the case that you disagree with." (Doc. 3033 ("Plea Tr.") at 33). After the Government recited the facts as to the felon-in-possession charge [Plea Tr. at 33-35], the Government described the Gangster Disciples, a criminal organization of which Movant was a member, as a violent street gang and a highly structured organization in thirty-five states, which: has a complex financial structure in place by which it moves money, including money that is the proceeds of illegal activities, around the country; engages in large-scale drug trafficking across state lines in substances including marijuana, cocaine, heroin, methamphetamine, and prescription pills; commits fraud through stolen identities, stolen credit card numbers, and in Movant's case, forges checks, which are

---

[2] Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, a prosecution may be transferred to a district where the defendant is held if certain requirements are met. Movant does not challenge the felon-in-possession conviction.

attempted to be deposited into accounts controlled by Gangster Disciples members; possesses and uses firearms to protect its drug business; severely beats its members as punishment for disciplinary infractions; engages in murder in furtherance of its aims, including murdering rivals, Gangster Disciples members who have committed serious infractions against the gang, and murdering witnesses and informants who might pose a threat to the ongoing criminal enterprise. (*Id.* at 36-38).

The Government recited facts specific to Movant, that, as a member of the Gangster Disciples, Movant participated directly in several of their categories of racketeering activity:

> Those include fraud, as alleged in paragraph 28 of the indictment. The defendant, along with Co-Defendant Mangwiro Sadiki-Yisrael, deposited a fraudulent check made out in the amount of $19,900 into his account.
>
> The defendant was also engaged in drug trafficking in connection with the Gangster Disciples. In particular, on two occasions, first in [sic] September 10th of 2014, he traveled with two other Gangster Disciples from Valdosta to Atlanta to protect a heroin transaction. He was armed when he did so. And on another occasion in August of 2015, he helped other Gangster Disciples arrange for the delivery through the U.S. mail of multiple pounds of methamphetamine for delivery to another Gangster Disciple. Two pounds of that methamphetamine was intercepted by federal law enforcement.

(Plea Tr. at 38-39). Thereafter, the District Court asked Movant if he disagreed with anything about the facts of the case regarding Movant's activities, to which Movant responded, "No, sir." (*Id.* at 39).

3

In the presentence report ("PSR"),³ the probation officer found that:

> [T]hrough a series of recorded conversations agents learned that around September 8, 2014, Covington attempted to negotiate the purchase of a half kilogram of cocaine for $18,000. The drug deal never occurred because Covington was arrested on September 10, 2014, by local police while in route to negotiate another drug deal. Covington also participated in protection of multi-kilogram drug deals while armed. Agents have evidence of Covington participating in the protection of two separate drug deals. Specifically, on March 12, 2015, Covington provided security for a deal for two ounces of heroin. While traveling to the second drug deal, Covington was stopped by law enforcement in Macon, Georgia. During the stop, officers found a firearm in his possession.

(PSR ¶35).

The PSR noted other direct conduct by Movant, including that Movant:

> helped coordinate the shipment of pound quantities of methamphetamine from California to other states for the benefit of the GD through the United States Postal Service. Agents learned that Covington provided an address for the packages to be delivered in Kennesaw, Georgia. Specifically, on August 5, 2015, co-defendant Nicholas Evans sent four packages containing methamphetamine from four different post offices in Temecula and Murrieta, California, to post officers in Georgia and Kansas. Covington was responsible for coordinating one of those packages.

(PSR ¶36).

In the plea agreement associated with the RICO charge, Movant agreed that the "applicable offense level based on drug weight reasonably foreseeable" to him

---

³   The probation officer issued a preliminary PSR and, after receiving more information, a final PSR. For ease of reference and discussion, when I discuss the final PSR I will refer to it as the PSR, whereas I will refer to the preliminary PSR as such.

4

was a Level 34, based on Movant's distribution and attempted distribution of two pounds of methamphetamine and eight ounces of heroin. (Doc. 1561-1 at ¶13; PSR ¶16). Both parties also agreed not to ask the Court for a sentence outside the applicable guidelines range. (*Id.* at ¶25). Finally, the plea agreement notified Movant that he potentially faced a statutory maximum sentence of life in prison, of which the Court also informed Movant during the plea hearing. (*Id.* at ¶7; Plea Tr. at 29).

The preliminary PSR noted that although in the plea agreement Movant had stipulated to the two pounds of methamphetamine and eight ounces of heroin, the Government had not provided the information supporting that amount. (PSR ¶38-9). To that end, the preliminary PSR only attributed to Movant the amount that was seized, which was 451 grams, or one pound, of methamphetamine, and two ounces of heroin. (*Id.*). Thereafter, however, the Government provided further evidence of the amounts to which Movant agreed in his plea agreement, and the probation officer amended the PSR to reflect that the amount of drugs reasonably foreseeable to Movant was, in fact, the two pounds of methamphetamine and eight ounces of heroin to which he stipulated. (*Id.*).

Based on that amount, the PSR calculated an offense level of 34. (PSR ¶66). With a three-level adjustment for acceptance of responsibility, Movant's total adjusted offense level was 31. (PSR ¶¶68, 70, 71, 71a). Because Movant's criminal

5

history category was calculated to be III [*Id.* at ¶83], the PSR recommended a guideline range of 135-168 months of imprisonment. (*Id.* at 34).

On November 20, 2018, the Court sentenced Movant on the RICO count to the lowest end of that guideline range, that is, 135 months of imprisonment. (Doc. 1938). On the felon-in-possession charge the Court sentenced Movant to a concurrent sixty months. (Doc. 1938). Movant did not appeal his convictions and sentences.[4]

In this §2255 motion, Movant argues that plea counsel was ineffective for failing to object to the PSR's finding as to the drug quantity that was attributed to Movant. Movant claims that he was only responsible for 451 grams of methamphetamine – the amount attributed to Movant in the preliminary PSR as the amount seized from him, and that counsel was ineffective for advising Movant to take a plea based on the higher amounts. For the following reasons, I **RECOMMEND** that the §2255 motion be **DENIED**.

## II.   STANDARD OF REVIEW

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences.

---

[4] The plea agreement contains a waiver of Movant's right to appeal or collaterally attack his convictions and sentences; however, claims of ineffective assistance of counsel are exempted from that waiver. (Doc. 1561-1 ¶27).

*United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's §2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

### III.     ANALYSIS

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court

may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992). *See also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process," *id.* at 59, by "convince[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

Movant does not appear to dispute that he entered his plea knowingly and voluntarily. Regardless, Movant's sworn testimony during the plea colloquy – which carries a strong presumption of truth (*see Blackridge v.* Allison, 431 U.S. 63, 74 (1977)) – indicates that he did, in fact, enter into his plea knowingly and voluntarily.

Movant's claim that counsel was ineffective for failing to argue that a lesser drug quantity should have been attributed to him is simply wrong. First, although Movant states that counsel never discussed the plea agreement with him, any such argument is belied by the record. Indeed, during the plea hearing Movant swore that: he had a chance to look at the plea agreement prior to entering his plea; he understood the plea agreement; no one had threatened or forced him to enter a guilty plea; no one made him any promises as to what his actual sentence would be; he felt that he had had sufficient time to think about and discuss the matter fully with his attorney before entering a guilty plea; and he was satisfied with his attorney's representation. (*See generally* Plea Tr.). Movant has not argued or brought forth any evidence whatsoever to rebut the strong presumption of veracity of his statements during the plea hearing, and he therefore has failed to demonstrate that his plea was anything other than knowing and voluntary. *Cf. Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (finding the movant's allegations that his plea was not voluntary were in direct conflict with his statements during the plea

colloquy, he produced no evidence to challenge the veracity of his sworn testimony, and his last minute self-serving statements were therefore insufficient to demonstrate that his plea was not entered into voluntarily).

Likewise, at the plea hearing Movant agreed with the Government's recitation of the facts – including, *inter alia*, that: he was a member of the Gangster Disciples enterprise; the enterprise engaged in "large scale drug trafficking, substances including marijuana, cocaine, heroin, methamphetamine, and prescription drugs;" "[t]he Gangster Disciples also engage in fraud using stolen identities, stolen credit card numbers, and, in [Movant's] case, forged checks, which are attempted to be deposited in accounts controlled by Gangster Disciples members;" the drugs attributed to him included two pounds of methamphetamine and eight ounces of heroin; he helped members arrange through the U.S. mail "multiple pounds" of methamphetamine for delivery to other members; and he twice attempted to protect heroin deals and was armed for one of them. (Plea Tr. at 35-39).

Finally, Movant has not demonstrated that a decision not to enter the plea and go to trial would be rational. Insofar as he claims that less drugs would have been attributed to him at trial, he mistakenly believes that the only proof of any such amount is limited to that amount which was seized. To the contrary, however, and as pointed out by the Government, the drug weight calculation is determined both by seized drugs and those drugs attributed to the enterprise that were reasonably

foreseeable to Movant – an amount which often can be greater than the seized drugs. *See* U.S.S.G. §2D1.2, Appl. Note 5 (advising that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance").

The Government provided proof that substantiated the amounts reflected in the plea agreement as well as in the final PSR. Specifically, the Government provided recorded conversations and witness statements that showed that: Movant discussed various drugs available and kilogram quantity pricing with two co-defendants; one co-defendant, Shauntay Craig, who was a drug distributor for the Gangster Disciples, stated that Movant and one other co-defendant, Terrance Summers, would be handling all of the Georgia drug transactions from that point forward; sometime after Craig's statement Movant coordinated with Craig a shipment of one pound of methamphetamine to Georgia; Movant admitted that he regularly delivered drugs for Craig; co-defendant Nicholas Evans told agents that he had mailed one pound of methamphetamine from California on two occasions after Craig pronounced that Movant and Summers would handle all Georgia drug deals, one of those packages was bound for Georgia, and USPS intercepted the drugs; witness Dominique Durden told agents that Movant had asked Durden to "move crystal ice for him" and that Movant had both "ice and cocaine" for sale; Movant admitted his repeated drug dealings with Craig, and other individuals told law

enforcement that Craig was dealing methamphetamine; and Movant was stopped by police on May 3, 2016, and a "trap" large enough to fit kilogram quantities of drugs was found in Movant's car.  (PSR ¶39).

The Government also provided proof that a controlled buy for two ounces of heroin occurred with another Gangster Disciples member, during which Movant was supposed to provide protection.  (PSR ¶39).  However, Movant and the other armed Gangster Disciples member were stopped by the police on the way to the deal and arrested; and shortly after his release, Movant provided armed protection during another controlled buy involving 57.2 grams, or two more ounces, of heroin.  Given Movant's repeated pronouncements regarding drug dealing, the Government argued to the probation officer that eight ounces of heroin was a conservative amount that was reasonably foreseeable to Movant.

Had Movant proceeded to trial, all of this evidence would have been presented to a jury, and, at a trial with thirty-two of his co-defendants – some of whom could have entered a plea and testified at trial – Movant potentially could have had more, rather than less drugs attributed to him.  And if Movant had not entered a plea the Government would not have dismissed the other charge against Movant for conspiracy to distribute methamphetamine, which, like the RICO conspiracy, also carries a maximum life sentence.  *See* 21 U.S.C. §§841(a)(1); 846.  Other than arguing about drug quantities, however, Movant does not discuss any defenses with

which he would have proceeded at trial. As a result, Movant cannot demonstrate that had counsel not advised him to stipulate to the drug quantities and enter a plea, there is a reasonable probability that he would have made any other decision but to enter the plea and cooperate with the Government. *See United States v. Jackson*, 596 F. Supp. 2d 124, 127 (D.D.C. 2009) ("[G]iven the lack of evidence that defendant would have succeeded at trial . . . defendant's guilty plea appears to have been the rational choice.").

Finally, at sentencing the District Court emphasized that it sentenced Movant to the low end of the guideline range because Movant had shown "exceptional acceptance of responsibility by pleading guilty early," by "agreeing that a guideline sentence is a reasonable sentence and not asking for a downward departure" and that Movant made a "very sincere allocution and determination to turn his life around and go in another direction after he's released from prison which [the Court] hope[s] is sincere." (Sent. Tr. at 4). Had Movant proceeded to trial, he would not have shown such "exceptional" acceptance of responsibility. Importantly, without the three-level reduction for his acceptance of responsibility, Movant's adjusted offense level would have been 34 and the corresponding guideline range 168-210 months of imprisonment. *See* U.S.S.G. §5A, Sentencing Table. And after a lengthy trial alongside his co-defendants, including the admission of detailed evidence of the

Gangster Disciples' criminal activities, it is doubtful that the Court still would have sentenced Movant to the lower end of the guideline range.

Under these circumstances, I cannot find that a rational person in Movant's situation would have rejected the plea, and Movant has therefore failed to demonstrate prejudice. *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding the movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where he received the "exceptional benefit" of lowering his sentence of imprisonment by eight years); *United States v. Mooneyham*, 580 F. App'x 657, 659-60 (10th Cir. 2014) ("Because Mr. Mooneyham has not identified facts indicating that a rational defendant might have preferred trial over the plea offer, he cannot show prejudice; thus, we reject the claim of ineffective assistance of counsel."); *United States v. Lewis*, No. 15-cr-335-WJM-2, 17-cv-53-WJM, 2018 WL 1456274, at *6 (D. Colo. Mar. 23, 2018) (defendant did not show that it would have been rational to go to trial where she entered a plea to possession with intent to distribute more than 50 grams of methamphetamine and received a 56-month term of imprisonment, because she presented no evidence of a defense she would have raised at trial and the potential penalty would have been at least the 120-month statutory minimum); *Jackson*, 596 F. Supp. 2d at 127 (rejecting defendant's claim that he would have gone to trial instead of entering a plea because, *inter alia*, a rational defendant would not do so

based on the prospect for a significantly higher sentence absent defendant's cooperation with the government).[5]

## IV. CONCLUSION

Based on the foregoing reasons, I **RECOMMEND** that Jeremiah Covington's motion to vacate his sentence [Doc. 2954] be **DENIED WITH PREJUDICE**.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

---

[5] To the degree that Movant claims that counsel did not review the PSR with him before sentencing, Movant's counsel told the Court that he did, in fact, do so. (Sent. Tr. at 3). Regardless, Movant does not explain how any such discussion would have changed the outcome of his sentencing.

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" my determination that Movant did not demonstrate that counsel was constitutionally ineffective. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO RECOMMENDED** this 9th day of September, 2020.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE